IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONT ROW GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>LY BERDITCHEV CORP.<br><br>    Defendant. | Case No.:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, Front Row Group ("Plaintiff" or "Front Row"), by and through its counsel, for its Complaint against Defendant, LY Berditchev Corp. ("Defendant" or "LYB"), alleges as follows:

**SUMMARY**

Front Row Group ("Front Row") is the exclusive distributor for a variety of branded products on Amazon.com ("Amazon"). This complaint has been filed to address claims by Front Row against Defendant LY Berditchev Corp. for, inter alia: (Count I) false advertising under 15 U.S.C. § 1125(a)(1)(B); (Count II) tortious interference with the contracts between Front Row and the owners of a number of brands: Prothera Inc. d/b/a SFI USA (KLAIRE LABS), Manic Panic N.Y.C., Inc. (MANIC PANIC), Pettenon Cosmetics S.p.a. S.B. (FANOLA), Stable Step LLC (POWERSTEP), and Loma Licenciamento De Marcas Ltda. (TRUSS) (collectively, "The Brands"); and (Count III) for acts of unfair competition under New York law.

The Brands have given Front Row the exclusive authority to resell their branded products ("Branded Products") on its Amazon storefront through written contracts of exclusivity (the "Agreements"). In exchange for these exclusive rights, Front Row is required to adhere to heightened quality controls and engage in extensive education and training to provide insight and

1

support to customers for The Brands. Put simply, Front Row is held to a strict standard of operating procedures conveyed and enforced by The Brands for the sale of the Branded Products. These provisions protect The Brands as well as consumers from the harmful practices and unwarranted products offered by unauthorized sellers like Defendant.

Because of the nature of the products made by The Brands, they maintain detailed oversight and involvement in sales and handling of the Branded Products from the start of their journey to the end user. The Branded Products fit into the health and wellness category and include hair care products and orthotic insoles. Some of these products are liquids that must be packaged with special care to protect against damage or leakage when sent by mail. Consumers are unhappy when they receive a damaged product or mangled product box in the mail and blame the brands for their bad experience. The Brands have entrusted Front Row with the responsibility of assuring consumer satisfaction with sales of the Branded Products on Amazon and require Front Row to adhere to their detailed standards and procedures for product handling and shipping. Some of those procedures add costs to the overhead of selling the product. As an unauthorized seller, Defendant avoids those costs and procedures allowing it to undercut the price charged by Front Row.

The Defendant has been willfully reselling products of The Brands on Amazon without authorization from The Brands or consideration of their required quality control provisions. Defendant has been advised of the valid and enforceable Agreements between The Brands and Front Row through a demand letter sent on December 12, 2024, expressly disclosing the existence of the relationship between The Brands and Front Row and explaining the claims presented herein. Defendant has ignored Plaintiff's attempts to amicably resolve this matter, and the Plaintiff has been left with no choice but to file this cause of action to defend The Brands and their customers.

Defendant's unauthorized resales harm the reputation of each of the brand names owned by The Brands and consumers who believe they are purchasing from the manufacturer or from an authorized distributor, such as Front Row, with a manufacturer's warranty for the purchased products. Consumers are unaware that they are purchasing products that do not have the manufacturer's warranties and guarantees, nor are those unauthorized products subject to the quality control standards of genuine products. Thus, this cause of action seeks to put an end to the willful and improper sales by the Defendant to unsuspecting consumers.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and pendant jurisdiction over the claims based in New York state and common law.

2. Defendant is subject to specific jurisdiction in this Court because, *inter alia*, it conducts business in the District, has committed the acts complained of herein within this District, and is registered as a corporation in New York.

3. On information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since Defendant regularly does business in this jurisdiction and is incorporated here.

4. Defendant has purposely directed its activities, including the illegal acts against Plaintiff described below, toward this District and this action arises from those activities.

## PARTIES

5. Plaintiff is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 31 Howard Street, New York, NY 10013.

6. On information and belief, Defendant is a New York corporation having an address of 95 High St., Passaic New Jersey, 07055 that resells products through an Amazon storefront named "LY Berditchev Corp."

## BACKGROUND FACTS

7. Plaintiff is the exclusive distributor of high-quality products pursuant to exclusive agreements (hereinafter referred to as the "Agreements") with The Brands for sale of their products on internet sales platforms, including Amazon. Plaintiff sells on Amazon through its company Beauty Pro Distributors LLC and its storefront "SBT Supply."

8. Plaintiff's storefront has the following description under "About Seller:"

"SBT Supply is the exclusive authorized seller of DermaQuest, Essations, Fanola, Feather, Manic Panic, One N Only, Peter Coppola, Popband, Prive, Rolda, Scruples, Seki Edge, Sinesia, Spornette, Surfers Salve, Tricovit and Truss. We are committed to providing each customer with the highest standard of customer service and offer the full manufacturer's warranty on all products and tools we sell."

9. The Defendant herein is not authorized to resell products of The Brands on Amazon. Thus, any sales of those products by the Defendant are unauthorized, do not carry the manufacturer's warranty, interfere with the exclusive agreement provisions in place between The Brands and Front Row, and are not subject to the quality control service requirements of The Brands for their products (including the packaging procedures for safe shipping or their product recall provisions in the event of a defect.)

10. Front Row has spent considerable resources to market products made by The Brands, to maintain its obligations under these Agreements, and to protect its relationship with The Brands.

11. Consumers trust products made by The Brands and recognize them as high quality products due, in part, to their quality, reliability, and customer buying experience. In the highly competitive health and supplements industry, rigorous quality standards and effective customer service are fundamental to a customer's decision to purchase or repurchase a particular product.

12. Defendant has never been granted permission from Front Row or The Brands to advertise or sell their products.

13. By exclusively advertising and distributing the Products under the Agreements, Front Row is able to provide and ensure the safety and satisfaction of consumers and maintain the integrity of Products that come backed with the manufacturer warranties.

## ONLINE MARKETPLACE CHALLENGES

14. The explosion of e-commerce websites, particularly Amazon, has created trust problems for manufacturers. Because the purchase is made without inspection of the physical product, manufacturers need to promote trust that the products the consumer receives will be genuine, subject to the full manufacturer's warranty, and provide the customer with a positive buying experience from start to finish that reflects positively on the manufacturer.

15. In this e-commerce age, unauthorized resellers can obtain a manufacturer's products from a variety of sources and sell them anonymously online. Many online marketplaces also allow third parties to sell products anonymously, i.e., without disclosing their actual identity or sources to consumers. Amazon has tried to require sellers to post their names and mailing address, but these are not checked to ensure accuracy.

16. As such, any person who is able to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal his/her real identity or location to consumers. This effectively prevents the manufacturer, the consumer,

and authorized resellers from being able to reach unauthorized resellers to address quality concerns.

17. In many instances, products for sale on Amazon have been materially different from those offered through authorized sales channels. For example, such products are damaged, past their "use by" expiration date, sold without a meaningful guarantee, by sellers who do not have product liability insurance, not in compliance with federal regulations, or of an inferior quality. Consumers have purchased such products and had a poor buying experience. Anecdotes of such deceptive sales undermines the element of trust necessary for a robust online sales channel.

18. On Amazon, all sales of a particular product are sold under a single Amazon Standard Identification Number (ASIN). Authorized products are listed side-by-side with unauthorized products so consumers face an even more significant challenge trying to determine whether a product is likely to be genuine or is probably an inferior version.

19. Consumers will associate any harm or inferior product with the manufacturer, not the anonymous reseller. For example, a customer purchases a product on a marketplace and receives a damaged, defective, or poor-quality product, the customer is much more likely to associate that frustration with the brand/manufacturer than the anonymous seller. The consumer may leave a negative review which significantly impacts a brand's reputation, but which likely occurs from a sale by an unauthorized reseller.

20. This is precisely the problem that e-commerce websites such as Amazon create, anonymous third parties sell products that may be inferior or defective in some way and consumers are ultimately harmed. The Brands try to protect consumers from such bad buying experiences by appointing an exclusive seller.

**Front Row Has Implemented Strict Quality Controls**

21. Front Row is required to follow and implement quality controls that apply to products sold with the goal of protecting consumers and the value and goodwill associated with The Brands.

22. The goal of the quality controls implemented by Front Row is to ensure that consumers receive undamaged products that feature all of the special characteristics that consumers have come to expect from products sold under The Brands – including the safety, quality, and reliability.

23. Front Row abides by the quality control required by The Brands.

24. Front Row's exercise of these quality controls is essential to the integrity, safety, and quality of the Branded Products sold by Front Row on Amazon, as well as the safety and satisfaction of consumers.

**Front Row is Required to Adhere to Quality Control and Customer Service Requirements**

25. The Brands maintain their strict quality controls over their respective products by conducting all sales through Authorized Resellers and Distributors who are subject to written contracts.

26. Front Row is the only Authorized Reseller on Amazon by The Brands and is required to abide by the authorized reseller policies and agreements for their products (referred hereinafter as the "Rules").

27. The Rules require Front Row to adhere to heightened quality controls, including certain packaging, shipping, and product protection procedures that are costly and time-consuming. Further, if a quality control issue with a product arises on Amazon, Front Row can address the issue immediately if Front Row made the sale.

7

28. Front Row is prohibited from relabeling, repackaging, or altering Products. Front Row must not remove, translate, or modify the contents of any label or literature on accompanying Products.

29. Further, Front Row is prohibited from tampering with, defacing, or otherwise altering any identifying information on Products, including any serial number, UPC code, or other identifying information.

30. Front Row also ensures that consumers receive safe products by requiring that it follows the Rules and assists with recalls and other consumer safety information efforts.

31. The Rules also require that Front Row provides certain services to its customers. It must familiarize itself with the features of all Products kept in its inventory. This requirement ensures that Front Row is uniquely qualified to recommend Products best suited for end-user consumers' needs and to address any questions or issues as they arise.

32. Following the sale of Products, Front Row supply ongoing support to end-user consumers and are required to provide exemplary customer service and support by promptly responding to consumer inquiries.

33. The quality control requirements instituted by The Brands have been implemented so that Front Row can help The Brands to protect consumers, as well as the value and goodwill associated with the trademarks owned by The Brands for the Branded Products.

34. Consumers find it relevant to their purchasing decision to know whether a product they were considering buying was being sold by an authorized reseller who is subject to The Brands' quality control requirements.

35. Similarly, consumers would find it important to know whether the product being sold was by an unauthorized seller who is not subject to, and does not abide by, the quality controls of The Brands.

36. Consumers would prefer to know that the product they buy online are genuine, unexpired, and defect-free and will arrive free from shipping damage, product leakage, and with a full manufacturer's warranty in the event of a problem.

37. Branded Products purchased from Front Row also come with the manufacturer's warranty (the "Warranty").

38. As discussed above, Front Row cannot ensure the quality of the products sold by Defendant, who is not subject to control by The Brands or Front Row. For this reason, the Warranty is not available for Branded Products sold by Defendant.

39. Defendant is not subject to the Rules and does not provide the same packaging, shipping, and product protection procedures that ensure product integrity and prevent damage that Front Row is required to provide.

40. These differences are material and important to the consumer. They also risk the goodwill and value of the trademark rights owned by The Brands in Branded Products because The Brands can no longer control the quality of the Branded Products sold by Defendant.

41. Defendant also does not incur the costs of compliance that come with authorized sales of the Branded Products. This gives Defendant a pricing advantage on Amazon and allows Defendant to undercut Plaintiff in sales of Branded Products.

42. Plaintiff is directly harmed as a result of such acts.

## **COUNT I -FALSE ADVERTISING**

43. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-41 as though set forth herein.

44. Amazon's condition guidelines policies state that a "new" product comes with the manufacturer's warranty/guarantee.

45. Under Amazon's definition of "new," Branded Products sold by Plaintiff are new.

46. Specifically, the Branded Products sold by Plaintiff are authorized, subject to the quality control requirements of The Brands, and carry the manufacturer's full warranty.

47. The Branded Products sold by Defendant, on the other hand, are not authorized by or subject to the quality control standards of The Brands.

48. The Branded Products sold by Defendant are not "new" pursuant to Amazon's definition and do not carry the manufacturer's warranty.

49. Defendant's listing for its products do not disclose that its products are not new under the Amazon definition.

50. Defendant's storefront on Amazon does not disclose that it is not an authorized reseller.

51. By its actions, Defendant's actions deceive and confuse consumers into the purchase of its products under the false and mistaken belief that the products they buy on Amazon are new and carry the manufacturer's warranty.

52. Defendant's advertising for the Branded Products omits material representations that make the advertising likely to confuse or mislead prospective customers as to a material characteristic of the Branded Products offered by LYB.

53. LYB's deception is material in that it is likely to influence the purchasing decision

10

of consumers trying to decide on a seller for a desired product.

54. It would be material and important for potential consumers to know that the products sold by LYB that are not new (as Amazon has defined that term), do not carry the manufacturer's warranty, lack quality controls to ensure that the product is not damaged or leaking during shipping, and does not have the support services of an authorized seller.

55. LYB's products are priced lower than authorized new products due to the lack of compliance with the manufacturer's quality control and support obligations imposed on Plaintiff as an authorized seller.

56. LYB's lower prices on its unauthorized products become ranked and are featured more prominently on Amazon due to the applicable algorithm that considers price as an important factor in ranking seller offerings. This higher ranking makes it more likely that prospective customers will purchase the LYB products before getting to the new product with the warranty that is offered by Plaintiff.

57. This constitutes false advertising under 15 U.S.C. § l 125(a)(l)(B).

## COUNT II – TORTIOUS INTERFERENCE
## WITH CONTRACT AND BUSINESS RELATIONS

58. Plaintiff realleges and incorporates paragraphs 1 through 41 as though set forth herein.

59. Branded Products sold by Front Row are pursuant to exclusive agreements provisions in written contracts with The Brands.

60. Front Row has entered into valid and enforceable agreements with The Brands to buy exclusively from The Brands and to be the exclusive seller of Branded Products on Amazon. The agreements prohibit The Brands from authorizing any other resellers for the Branded Products on Amazon.

11

61. By entering into such agreements, Plaintiff had a reasonable expectation that it would make sales and realize profits of Branded Products through its storefront on, inter alia, Amazon.

62. An exemplary contract clause in the KLAIRE LABS distribution agreement (https://us.sfihealth.com/legal/sales-distribution) reads:

> "Internet Resale Prohibited. [Distributor] shall not advertise, list, offer for sale, sell or distribute any Product via the Internet, except with SFI's prior written approval. Without limiting the generality of the foregoing, [Distributor] shall not sell Product via any third-party websites, mobile applications, or online marketplaces including Amazon.com and Ebay.com. [Distributor] shall not advertise using banner/pop-up advertisements, or using sponsored searches (e.g., Google AdWords, Yahoo! or Bing Search Marketing) without SFI's prior written approval. For the avoidance of doubt, nothing in this paragraph shall prevent [Distributor] from selling: (i) Product through Wellevate, Fullscript, NP Script, Kaerwell, Doctor's Supplement Store or any other approved online dispensary in accordance with this Agreement; or (ii) any private-labeled Products provided by SFI which are not branded with SFI intellectual property, including but not limited to "Klaire", "Klaire Labs" or any other SFI logo or brand.
>
> Reseller/Distributor Resale Prohibited. [Distributor] shall not sell Product to anyone who [Distributor] suspects, knows, or reasonably should know, intends to re-sell or redistribute the Product. [Distributor] shall only sell the Product in bona fide retail transactions with patients under [Distributor]'s care. Without limiting the generality of the foregoing, distribution of Product for resale is strictly prohibited.

63. An exemplary restriction clause from the Manic Panic agreement states:

> 4. Manner of Sale. Customer shall sell the Products only as set forth herein. Sales in violation of these Terms are strictly prohibited and may result in T&S's immediate termination of Customer's account, in addition to all other remedies available to T&S under applicable law or in equity. Furthermore, to the extent permitted by applicable law, **Products sold by Customer to unauthorized persons or through unauthorized channels, including unauthorized websites, or in violation of these Terms or applicable law, shall not be eligible for any applicable promotions, services, or other benefits, including, coverage under any applicable Product warranties or other guarantees**, except to the extent required by applicable law.
>
> 4.1 Customer shall sell Products solely to Approved Retailers (as defined herein) and salons authorized to use and engage in the sale of the Products. **Customer shall not sell Products to any third-party entity or person for subsequent resale online, including without limitation Amazon.com** and/or any third-party

12

marketplaces, such as eBay, Jet, Rakuten, Walmart Marketplace, or Sears Marketplace (all collectively, the "Prohibited Online Marketplaces"). For purposes of these Terms, "Approved Retailers" refers to entities engaged solely in the sale of the Products to end user consumers via physical store fronts or through websites owned or operated by that retailer, provided however, that such websites identify the retailer's full legal name, mailing address, telephone number and email address; and further, for clarity, Approved Retailers are not permitted to sell the Products on or through any Prohibited Online Marketplaces without the prior written consent of T&S, which is granted solely through execution by T&S of an Authorized Customer Terms & Conditions Agreement.

64. Defendant is not an authorized reseller of Branded Products and has been notified of the resales restrictions in place between The Brands and their Distributors and of the exclusive arrangement between Plaintiff and each of The Brands. (See Exhs. A and B.) Despite this knowledge, Defendant has sold and continues to sell a high volume of Branded Products.

65. Defendant obtains its inventory of Branded Products in volume from one or more authorized distributors using deceptive and unfair practices that include misrepresenting the nature of its business to authorized distributors of products by The Brands, using straw-man buyers who engage in such deceptive conduct and misrepresentations to authorized distributors of products by The Brands on behalf of LYB, and similar acts designed to hide or mislead authorized distributors as to the true nature of LYB's business.

66. But for LYB's misconduct, the contracts between The Brands and their distributors and between The Brands and Plaintiff would not have been breached by LYB's unauthorized sales of Branded Products on Amazon.

67. But for LYB's misconduct, the business advantages that Plaintiff expected to receive from being the exclusive seller of Branded Products on the internet marketplaces, such as Amazon, would have provided Plaintiff with the sales and profits it expected from its exclusive arrangement with The Brands.

68. Defendant is not subject to the quality control provisions required by The Brands

13

or subject to their product recall safety provisions.

69. Defendant has been notified of Front Row's business relationship with The Brands and the relevant terms of that contractual relationship. Defendant was advised of the relationship between Front Row and The Brands in a demand letter dated December 12, 2024 (Exhibit A) and again on January 30, 2025 (Exhibit B). The demand letters specifically notified LYB of contractual provisions that Front Row was made the sole and exclusive distributor for Branded Products sold on Amazon and that The Brands each have provisions in their distributor agreements that prohibit online sales and sales to customers who will resell the Branded Products on the internet on, inter alia, Amazon..

70. The demand letter sought assurances from LYB that it would respect that agreement and discontinue its sales of the Branded Products. LYB did not respond or provide the requested assurances. Rather, LYB continues to list and offer the Branded Products for sale on Amazon.

71. Defendant's actions improperly interfere with Front Row's advantageous and contractual relationship using unlawful means, namely, by inducing authorized distributors to breach their restrictive sales clauses with The Brands, by deceiving those authorized distributors as to the nature of its business, and by using shell companies and strawman buyers to circumvent the resale restrictions.

72. LYB has no financial stake in the businesses of the authorized distributors of the Branded Products.

73. Defendant is Plaintiff's competitor in the sales of Branded Products on Amazon.

74. Defendant does not have a prior contractual or economic relationship with The Brands or their authorized distributors to conventional retail stores and professional businesses.

75. Defendant has only a generalized economic interest in soliciting authorized distributors for The Brands to purchase products for profit.

76. Defendant's conduct directly and proximately caused disruption of Front Row's relationship with The Brands.

77. Based on its failure to provide assurances and upon information and belief, Defendant intends to cause harm to Front Row and jeopardize its contracts and relationships with The Brands.

78. Defendant's direct contravention of purchasing the Products from unauthorized resellers without approval of The Brands and/or Front Row were made with the improper motive to harm Front Row and destroy its relations with The Brands, and, for the improper purpose of suppressing competition.

79. Defendant's actions interfered with Front Row's business relationships with The Brands and proximately caused Front Row's sales of the Branded Products to diminish and its reputation on Amazon and with The Brands to be harmed by Defendant's unlawful sales of the Branded Products.

80. Defendant's actions interfered with Plaintiff's business relationship with The Brands and proximately caused a diminution in the effectiveness of its reputation and its sales.

81. The intentions of Defendant are demonstrated by the fact that Defendant induced the breach or circumvention of contractual provisions prohibiting sales to unauthorized resellers such as Defendant.

82. The intentions of Defendant are demonstrated by the fact that Defendant has never offered any assurances that it will discontinue its unlawful and harmful acts.

83. Defendant's procurement and sales of the Branded Products were made malice

and with ill will toward Front Row.

84. Plaintiff has been damaged as asserted herein and these damages continue to accrue.

85. Plaintiff is entitled to damages, costs and attorneys' fees as allowed by law.

86. Plaintiff has suffered injury and, unless Defendant is enjoined from such activity, will continue to suffer injury.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment as follows:

A. An order declaring that Plaintiff is the only authorized and exclusive seller of the Branded Products on Amazon;

B. Preliminary and permanent injunctive relief restraining Defendant, its agents, servants, employees, successors and assigns, and all others in concert and privity with Defendant, from selling the Branded Products on Amazon and any other e-commerce platform in the United States.

C. An award of all damages that Plaintiff has suffered as a result of Defendant's actions;

D. An award of all costs and fees incurred in this Action; and

E. Such other and further relief as the Court shall find just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: February 13, 2025                                Respectfully submitted,

*/s/ Seema Rambaran*
Seema Rambaran (Id. No. 5778204)
SAUL EWING LLP
1270 Avenue of the Americas
New York, NY 10020
212-980-7237
Seema.rambaran@saul.com
*Attorneys for Plaintiff Front Row Group*