IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARE TO BE GRAH LLC DBA FRONT ROW GROUP, BEAUTY PRO DISTRIBUTORS LLC AND FB SELECT LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LY BERDITCHEV CORP.,<br><br>Defendant. | Case No.: 1:25-cv-01307-AS<br><br>**JURY TRIAL DEMANDED** |

# AMENDED COMPLAINT[1]

Plaintiffs, Dare to be Grah LLC dba Front Row Group, Beauty Pro Distributors LLC and FB Select LLC (collectively, "Plaintiffs" or "Front Row"), by and through its counsel, for its Amended Complaint against Defendant, LY Berditchev Corp. ("Defendant" or "LYB"), alleges as follows:

## NATURE OF THE ACTION

This is an action for False Advertising under the Lanham Action (15 U.S.C. § 1125(a)(l)(B)) [Count I] and for tortious interference with contractual relations under New York common law [Count II].

## JURISDICTION AND VENUE

1.  The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and pendant jurisdiction over the claims based in New York state and common law.

2.  Defendant is subject to specific jurisdiction in this Court because, *inter alia*, it

---

[1] Pursuant to Judge Subramanian's Individual Practices, 2.B., a redline of the original Complaint showing all differences between the original and amended complaint is attached herewith.

1

conducts business in the District, has committed the acts complained of herein within this District, and is registered as a corporation in New York.

3.  On information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since Defendant regularly does business in this jurisdiction and is incorporated herein.

4.  Defendant has purposely directed its activities, including the illegal acts against Plaintiff described herein, toward this District and this action arises from those activities.

## PARTIES

5.  Dare to be Grah, LLC dba Front Row Group is a limited liability company incorporated under the laws of the State of New York, with its principal office at 31 Howard Street, New York, NY 10013.

6.  Beauty Pro Distributor LLC is a limited liability company incorporated under the laws of the state of Florida with offices in Florida at 5455 North Federal Highway, Suite O, Boca Raton, Florida.

7.  FB Select LLC is a limited liability company incorporated under the laws of the State of Delaware with its principal office at 31 Howard Street, New York, NY 10013.

8.  Beauty Pro Distributors LLC and FB Select LLC are owned by Front Row Group.

9.  On information and belief, Defendant is a New York corporation having an address of 95 High St., Passaic New Jersey, 07055 that resells products through an Amazon storefront named "LY Berditchev Corp."

## BACKGROUND FACTS

10. Plaintiffs hold rights to be the exclusive distributor for a variety of branded products on Amazon.com ("Amazon") that are made by various companies including Prothera Inc. d/b/a

SFI USA (KLAIRE LABS), Manic Panic N.Y.C., Inc. (MANIC PANIC), Pettenon Cosmetics S.p.a. S.B. (FANOLA), Stable Step LLC (POWERSTEP), and Loma Licenciamento De Marcas Ltda. (TRUSS) (collectively, the "Contract Brands").

11. Amazon hosts a marketplace for third party sellers to offer and sell various products across state and country boundaries via the internet. Products purchased are then sent by one of various interstate carriers for delivery to the consumer.

12. The branded products sold by Plaintiffs generally fit into the health, wellness, and personal care categories, e.g., hair care products, nutritional supplements, and orthotic insoles. Because of the nature of the products made by the Contract Brands, they maintain detailed oversight and involvement in the sales and handling of their products from the start of their journey to the end user.

13. In the event a product defect is discovered, the Contract Brands rely on their network of authorized distributors and exclusive online selling agent to communicate any product recalls, warnings, etc. to customers of the affected products. That same network is responsible for communicating the manufacturer's warranty guarantees for the Branded Products to customers and abiding by certain quality controls for the Branded Products that the Contract Brands have established to minimize defects and handle problems with their distributed products.

14. The quality control efforts undertaken and required by the Contract Brands are all directed towards a good experience for the ultimate consumer of the Branded Product. Consumers come to associate that good experience with the product's trademark and expect to have a similar good experience in future purchases. Conversely, bad consumer experiences produce the opposite reaction. Collectively, consumer experience is embodied in the term "goodwill" that is associated with a trademark. This goodwill is harmed by Defendant's actions complained of herein.

15. Consumers consider the availability of the manufacturer's warranty and the reputation of a product based on its trademark as important factors in their decision whether to buy a particular product from a particular source. Consumers are unhappy in those rare circumstances when they encounter a problem with a genuine product but only later learn that they bought that product from an unauthorized source that was not supported by the manufacturer's warranty.

*False Advertising*

16. Those who buy products on Amazon expect that the product will be new and carry the manufacturer's warranty. Amazon promotes this understanding with published "General Condition Guidelines" found at https://amzn.to/3FGwnld:

> The following guidelines apply to all product categories unless otherwise indicated within specific categories.
> - *New*: Just like it sounds. A brand-new item. Original manufacturer's warranty, if any, still applies, with warranty details included in the listing comments. Original packaging is present for most New items but certain items may be re-boxed.

17. This complaint has been filed to address false and misleading representations made to consumers in product advertising by Defendant that it is selling "new" products made by Prothera Inc. d/b/a SFI USA (KLAIRE LABS) and Stable Step LLC (POWERSTEP) (collectively, the "Advertised Brands") that are covered by the manufacturer's warranty.

18. The manufacturers of the Advertised Brands do not, however, offer their manufacturer's warranty or customer satisfaction guarantees for sales made by unauthorized sellers, such as Defendant.

19. On its website at https://bit.ly/3FRLUi2, KLAIRE LABS requires that purchases of KLAIRE LABS products on Amazon must be from Front Row to qualify for its satisfaction guarantee:

4

"For Sales on the Amazon platform, the SFI / Klaire Labs brand works hard to ensure that only authentic, high quality products reach consumers in the condition we intend. As such, **for all sales on the Amazon platform, the SFI / Klaire Labs brand offers a 45 day Satisfaction Guarantee which will NOT be honored without provision of valid proof of purchase directly from the Fortress Brand Wellness Amazon storefront**."

20.     A sample of the POWERSTEP warranty disclaimer is found on the product box for the POWERSTEP products:

> ©2022 Stable Step, LLC. PowerStep® is a registered trademark of Stable Step, LLC. PowerStep products purchased from unauthorized resellers are not covered by our customer satisfaction guarantee.

21.     Defendant cannot, therefore, truthfully represent in its Amazon listings for the Advertised Brands that they are new so as to carry the manufacturer's warranty or customer satisfaction guarantees. Nonetheless, that is what Defendant does. See Exhs. A-B (accessed June 6, 2025).

22.     The text of Defendant's listings on Amazon for the Advertised Brands are important to consumers in deciding whether to buy an offered product from Defendant.

23.     The text of Defendant's listings on Amazon mislead the consumer into a belief that Defendant is authorized to sell the Advertised Brands.

24.     Defendant's listings on Amazon for the Advertised Brands are misleading as to the applicability of the manufacturer's warranty and/or customer satisfaction guarantee.

25.     Consumers who read Defendant's listings for the Advertised Brands believe that those products carry the manufacturer's warranty and customer satisfaction guarantes.

5

26. Consumers rely on Defendant's listings and buy the Advertised Products from Defendant with the mistaken belief that such products are covered by the original manufacturer's warranty and customer satisfaction guarantees.

27. Plaintiffs are authorized to sell the Advertised Brands. Such sales include the manufacturer's warranty and customer satisfaction guarantees.

28. Plaintiff and Defendant compete for sales of Advertised Brands on Amazon.

29. Sales of Advertised Brand products that are made by Defendant divert sales from Plaintiff and harm Plaintiff from, inter alia, the loss of profit associated with the diverted sales and the loss of goodwill between the consumer and Plaintiffs from the sale of a quality product.

30. In the context of listings for the Advertised Brands, consumers see that Plaintiffs (the authorized seller) are selling the same product as Defendant. The listing says that both products are "new." Amazon tells buyers that new products come with a manufacturer's warranty, so a consumer sees that Defendant sells the product for less. Perceiving no difference between them, Defendant makes the sale rather than Plaintiffs. Only later, if an issue arises with the product that requires the involvement of the manufacturer, does the consumer then learn that Defendant was an unauthorized seller. Their purchase is not covered by the manufacturer's guarantees. The consumer is thus upset. Their view of the manufacturer brand is diminished and harmed as a result of the misinformation underlying the purchase.

*Tortious Interference with Contract*

31. This complaint has also been filed to address conduct by Defendant LY Berditchev Corp. for tortious interference with the contractual relationships between Plaintiffs and the Contract Brands.

32. The Contract Brands have retail distribution contracts in place for authorized retail sources of Branded Products. Those distribution contracts have resale restriction terms that preclude the retail distributor from, inter alia, selling Branded Products through the internet unless specifically approved, to customers who would resell the products through the internet, and to any sales on Amazon.

33. In reliance on those resale restrictions, the Contract Brands have written contracts with Plaintiffs for the exclusive authority to resell their branded products ("Branded Products") on Amazon (the "Exclusive Agreements"). Defendant has been made aware of these Exclusive Agreements and has continued to acquire Branded Products in spite of such knowledge.

34. Defendant is not part of the approved distribution channels for products made by the Contract Brands.

35. Defendant knows of the exclusive sales contract between Plaintiffs and the Contract Brands.

36. Since 2024, the storefront for Plaintiff's SBT Supply has identified SBT Supply as having an exclusive arrangement for the FANOLA, MANIC PANIC, and TRUSS among other brands:

> "SBT Supply is the exclusive authorized seller of DermaQuest, Essations, Fanola, Feather, Manic Panic, One N Only, Peter Coppola, Popband, Prive, Rolda, Scruples, Seki Edge, Sinesia, Spornette, Surfers Salve, Tricovit and Truss. We are committed to providing each customer with the highest standard of customer service and offer the full manufacturer's warranty on all products and tools we sell."

37. Plaintiffs specifically notified Defendant of their exclusive arrangement with all of the Contract Brands by notification letters in December 2024 and January 2025. (Exhs. C-D.)

38. Defendant's actions in acquiring products made by the Contract Brands for unauthorized resale on Amazon were performed with knowledge of the exclusive sales agreement in place between Plaintiffs and the Contract Brands.

39. Defendant's interference in that relationship was intentional and deliberate.

40. Defendant knew that it is not authorized to resell products made by the Contract Brands on Amazon.

41. Defendant and Plaintiffs compete for sales of products from the Contract Brands in the Amazon marketplace. Sales of such products that are made by Defendant come at the expense of a lost sale by Plaintiffs.

42. Defendant's interference in the contractual relationship between Plaintiffs and the Contract Brands was done without justification or other lawful purpose.

43. Defendant has and has had no pre-existing or direct relationship with any of the Contract Brands.

44. On information and belief, Defendant had no ownership interest in any business that was or is an authorized retail seller of products made by the Contract Brands.

45. On information and belief, Defendant purchased its inventory of products made by the Contract Brands from authorized retail sellers who were subject to written distribution agreements with the Contract Brands.

46. An exemplary retail distribution agreement for MANIC PANIC products carries the following resale restrictions that would prohibit sales to Defendant:

> 4.1 Customer shall sell Products solely to Approved Retailers (as defined herein) and salons authorized to use and engage in the sale of the Products. Customer shall not sell Products to any third-party entity or person for subsequent resale online, including without limitation **Amazon.com** and/or any third-party marketplaces, such as eBay, Jet, Rakuten, Walmart Marketplace, or Sears Marketplace (all collectively, the "**Prohibited Online Marketplaces**"). For purposes of these

Terms, "Approved Retailers" refers to entities engaged solely in the sale of the Products to end user consumers via physical store fronts or through websites owned or operated by that retailer, provided however, that such websites identify the retailer's full legal name, mailing address, telephone number and email address; and further, for clarity, Approved Retailers are not permitted to sell the Products on or through any Prohibited Online Marketplaces without the prior written consent of T&S, which is granted solely through execution by T&S of an Authorized Customer Terms & Conditions Agreement.

4.2  Customer shall not sell, ship or invoice Products to customers outside of the Territory or to anyone Customer knows or has reason to know intends to ship the Products outside of the Territory without the prior written consent of T&S.

4.3  Customer is permitted to market or sell the Products through websites owned or operated by Customer, provided that such websites identify Customer's full legal name, mailing address, telephone number and email address. T&S, in its sole and absolute discretion, may revoke Customer's authorization to market and sell the Products on such websites at any time, and Customer shall cease marketing /or selling the Products on such websites immediately upon notice of such revocation. For clarity, Customer shall not sell the Products on or through any of the Prohibited Online Marketplaces without the prior written consent of T&S. No one other than a corporate officer of T&S can authorize any sales on the Prohibited Online Marketplaces, and such authorizations must be in writing.

47.    A similar resale restriction is found in the retail distribution agreement for KLAIRE

LABS products that is available on its website at Sales and Distribution Policy | SFI Health US:

6.  Internet Resale Prohibited. HCP shall not advertise, list, offer for sale, sell or distribute any Product via the Internet, except with SFI's prior written approval. Without limiting the generality of the foregoing, HCP shall not sell Product via any third-party websites, mobile applications, or online marketplaces including **Amazon.com** and Ebay.com. HCP shall not advertise using banner/pop-up advertisements, or using sponsored searches (e.g., Google AdWords, Yahoo! or Bing Search Marketing) without SFI's prior written approval. For the avoidance of doubt, nothing in this paragraph shall prevent HCP from selling: (i) Product through Wellevate, Fullscript, NP Script, Kaerwell, Doctor's Supplement Store or any other approved online dispensary in accordance with this Agreement; or (ii) any private-labeled Products provided by SFI which are not branded with SFI intellectual property, including but not limited to "Klaire", "Klaire Labs" or any other SFI logo or brand.

7.  Reseller/Distributor Resale Prohibited. HCP shall not sell Product to anyone who HCP suspects, knows, or reasonably should know, **intends to re-sell or redistribute the Product**. HCP shall only sell the Product in bona fide retail transactions with patients under HCP's care. Without limiting the generality of the foregoing, distribution of Product for resale is strictly prohibited.

9

48. Defendant has used false representations to its retailer seller sources regarding the nature of its business, its intention to resell the Branded Products through the internet on Amazon, and through the use of straw man companies set up by Defendant to shield its identity as the actual purchaser of the Branded Products.

49. But for the actions of Defendant in deceiving its retail seller sources of products made by the Contract Brands, those retail seller sources would not be in breach of their contracts with the Contract Brands who would not, in turn, be in breach of their contracts with Plaintiffs.

50. Front Row has spent considerable resources to market products made by The Contract Brands, to maintain its obligations under these Agreements, and to protect its relationship with The Contract Brands.

51. Defendant has never been granted permission from Front Row or The Contract Brands to advertise or sell their products.

## COUNT I - FALSE ADVERTISING
## 15 U.S.C. § 1125(a)(l)(B)

52. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-51 as though set forth herein.

53. Amazon's condition guidelines policies state that a "new" product comes with the manufacturer's warranty/guarantee.

54. Under Amazon's definition of "new," Branded Products sold by Plaintiff are new.

55. Specifically, the Branded Products sold by Plaintiff are authorized, subject to the quality control requirements of The Contract Brands, and carry the manufacturer's full warranty.

56. The Advertised Products sold by Defendant, on the other hand, are not authorized by or subject to the quality control standards of The Contract Brands.

57. The Advertised Products sold by Defendant are not "new" pursuant to Amazon's

definition and do not carry the manufacturer's warranty.

58. Defendant's listing for its products do not disclose that its products are not new under the Amazon definition.

59. Defendant's storefront on Amazon does not disclose that it is not an authorized reseller.

60. By its actions, Defendant's actions deceive and confuse consumers into the purchase of its products under the false and mistaken belief that the products they buy on Amazon are new and carry the manufacturer's warranty.

61. Defendant's advertising for the Advertised Products omits material representations that make the advertising likely to confuse or mislead prospective customers as to a material characteristic of the Advertised Products offered by LYB.

62. LYB's deception is material in that it is likely to influence the purchasing decision of consumers trying to decide on a seller for a desired product.

63. It would be material and important for potential consumers to know that the Advertised Products sold by LYB that are not new (as Amazon has defined that term), do not carry the manufacturer's warranty, and do not have the support services of an authorized seller.

64. LYB's products are priced lower than authorized new products due to the lack of compliance with the manufacturer's quality control and support obligations imposed on Plaintiff as an authorized seller.

65. LYB's lower prices on its unauthorized products become ranked and are featured more prominently on Amazon due to the applicable algorithm that considers price as an important factor in ranking seller offerings. This higher ranking makes it more likely that prospective customers will purchase the LYB products before getting to the new product with the warranty that

is offered by Plaintiff.

66.This constitutes false advertising under 15 U.S.C. § 1125(a)(1)(B).

## COUNT II – TORTIOUS INTERFERENCE
## WITH CONTRACT
## (New York Common Law)

67.Plaintiff realleges and incorporates paragraphs 1 through 51 as though set forth herein.

68.Branded Products sold by Front Row are pursuant to exclusive agreements provisions in written contracts with the Contract Brands.

69.Front Row has entered into valid and enforceable agreements with the Contract Brands to buy exclusively from the Contract Brands and to be the exclusive seller of Branded Products on Amazon.

70.The agreements prohibit the Contract Brands from taking actions that allow other resellers to sell the Branded Products on Amazon.

71.In furtherance of the Agreements, the Contract Brands have resale restriction clauses in place with their authorized retail distributors that prevent those distributors from selling Branded Products through the internet and to customers who would resell the Branded Products through the internet.

72.An exemplary contract clause in the KLAIRE LABS distribution agreement (https://us.sfihealth.com/legal/sales-distribution) reads (emphasis supplied):

> "Internet Resale Prohibited. [Distributor] shall not advertise, list, offer for sale, sell or distribute any Product via the Internet, except with SFI's prior written approval. Without limiting the generality of the foregoing, [Distributor] **shall not sell Product via any third-party websites, mobile applications, or online marketplaces including Amazon.com and Ebay.com**. [Distributor] shall not advertise using banner/pop-up advertisements, or using sponsored searches (e.g., Google AdWords, Yahoo! or Bing Search Marketing) without SFI's prior written

approval. For the avoidance of doubt, nothing in this paragraph shall prevent [Distributor] from selling: (i) Product through Wellevate, Fullscript, NP Script, Kaerwell, Doctor's Supplement Store or any other approved online dispensary in accordance with this Agreement; or (ii) any private-labeled Products provided by SFI which are not branded with SFI intellectual property, including but not limited to "Klaire", "Klaire Labs" or any other SFI logo or brand.

Reseller/Distributor Resale Prohibited. **[Distributor] shall not sell Product to anyone who [Distributor] suspects, knows, or reasonably should know, intends to re-sell or redistribute the Product**. [Distributor] shall only sell the Product in bona fide retail transactions with patients under [Distributor]'s care. Without limiting the generality of the foregoing, **distribution of Product for resale is strictly prohibited**.

73. An exemplary restriction clause from the MANIC PANIC agreement states (emphasis supplied):

> 4. Manner of Sale. **Customer shall sell the Products only as set forth herein**. Sales in violation of these Terms are strictly prohibited and may result in T&S's immediate termination of Customer's account, in addition to all other remedies available to T&S under applicable law or in equity. Furthermore, to the extent permitted by applicable law, Products sold by Customer to unauthorized persons or through unauthorized channels, including unauthorized websites, or in violation of these Terms or applicable law, shall not be eligible for any applicable promotions, services, or other benefits, including, coverage under any applicable Product warranties or other guarantees, except to the extent required by applicable law.
>
> 4.1 Customer shall sell Products solely to Approved Retailers (as defined herein) and salons authorized to use and engage in the sale of the Products. **Customer shall not sell Products to any third-party entity or person for subsequent resale online, including without limitation Amazon.com** and/or any third-party marketplaces, such as eBay, Jet, Rakuten, Walmart Marketplace, or Sears Marketplace (all collectively, the "Prohibited Online Marketplaces"). For purposes of these Terms, "Approved Retailers" refers to entities engaged solely in the sale of the Products to end user consumers via physical store fronts or through websites owned or operated by that retailer, provided however, that such websites identify the retailer's full legal name, mailing address, telephone number and email address; and further, for clarity, Approved Retailers are not permitted to sell the Products on or through any Prohibited Online Marketplaces without the prior written consent of T&S, which is granted solely through execution by T&S of an Authorized Customer Terms & Conditions Agreement.

74. Defendant is not an authorized reseller of Branded Products.

75. Defendant was made aware of the exclusive sales contracts between Front Row

13

and the Contract Brands FANOLA, MANIC PANIC, and TRUSS by way of the profile page of the SBT Supply storefront on Amazon.

76. Defendant has been notified of the resale restrictions in place between the Contract Brands and their Distributors and of the exclusive arrangement between Plaintiff and each of the Contract Brands by letters in December 2024 and January 2025. (See Exhs. C and D.)

77. Despite this knowledge, Defendant has sold and continues to sell a high volume of Branded Products.

78. Defendant has no protectible, pre-existing business interest in or relationship with the authorized retail distributors from who it buys Branded Products.

79. Defendant obtains its inventory of Branded Products from one or more authorized retail distributors using deceptive and unfair practices.

80. Such deceptive and unfair practices include misrepresenting the nature of Defendant's business, using straw-man buyers who engage in such deceptive conduct and misrepresentations on behalf of LYB, and similar acts designed to hide or mislead Defendant as the true buyer and/or the true nature of LYB's business from those authorized retail distributors..

81. Sales of Branded Products to Defendant, either directly or indirectly, represent a breach of the sales restrictions in place between the Contract Brands and their authorized retail distributors.

82. Such a breach of the resales restrictions by the authorized distributors of the Contract Brands also makes the Contract Brands in breach of their contractual grants of exclusivity in their Agreements with Front Row.

83. But for LYB's misconduct, the contracts between The Contract Brands and their distributors and between The Contract Brands and Plaintiff would not have been breached by

LYB's unauthorized sales of Branded Products on Amazon.

84. But for LYB's misconduct, the business advantages that Plaintiff expected to receive from being the exclusive seller of Branded Products on the internet marketplaces, such as Amazon, would have provided Plaintiff with the sales and profits it expected from its exclusive arrangement with the Contract Brands.

85. Defendant is not subject to the quality control provisions required by the Contract Brands or subject to their product recall safety provisions.

86. Defendant has been notified of Front Row's business relationship with the Contract Brands and the relevant terms of that contractual relationship. Defendant was advised of the relationship between Front Row and the Contract Brands in a demand letter dated December 12, 2024 (Exhibit C) and again on January 30, 2025 (Exhibit D). The demand letters specifically notified LYB of contractual provisions that Front Row was made the sole and exclusive distributor for Branded Products sold on Amazon and that the Contract Brands each have provisions in their distributor agreements that prohibit online sales and sales to customers who will resell the Branded Products on the internet on, inter alia, Amazon..

87. The demand letter sought assurances from LYB that it would respect that agreement and discontinue its sales of the Branded Products. LYB did not respond or provide the requested assurances. Rather, LYB continues to list and offer the Branded Products for sale on Amazon.

88. Defendant's actions improperly interfere with Front Row's advantageous and contractual relationship using unlawful means, namely, by inducing authorized distributors to breach their restrictive sales clauses with the Contract Brands, by deceiving those authorized distributors as to the nature of its business, and by using shell companies and strawman buyers to

circumvent the resale restrictions.

89. LYB has no financial stake in the businesses of the authorized distributors of the Branded Products.

90. Defendant is Plaintiff's competitor in the sales of Branded Products on Amazon.

91. Defendant does not have a prior contractual or economic relationship with the Contract Brands or their authorized distributors to conventional retail stores and professional businesses.

92. Defendant has only a generalized economic interest in soliciting authorized distributors for the Contract Brands to purchase products for profit.

93. Defendant's conduct directly and proximately caused disruption of Front Row's relationship with the Contract Brands.

94. Based on its failure to provide assurances and upon information and belief, Defendant intends to cause harm to Front Row and jeopardize its contracts and relationships with the Contract Brands.

95. Defendant's direct contravention of purchasing the Products from unauthorized resellers without approval of the Contract Brands and/or Front Row were made with the improper motive to harm Front Row and destroy its relations with the Contract Brands, and, for the improper purpose of suppressing competition.

96. Defendant's actions interfered with Front Row's business relationships with the Contract Brands and proximately caused Front Row's sales of the Branded Products to diminish and its reputation on Amazon and with the Contract Brands to be harmed by Defendant's unlawful sales of the Branded Products.

97. Defendant's actions interfered with Plaintiff's business relationship with the

Contract Brands and proximately caused a diminution in the effectiveness of its reputation and its sales.

98. The intentions of Defendant are demonstrated by the fact that Defendant induced the breach or circumvention of contractual provisions prohibiting sales to unauthorized resellers such as Defendant.

99. The intentions of Defendant are demonstrated by the fact that Defendant has never offered any assurances that it will discontinue its unlawful and harmful acts.

100. Defendant's procurement and sales of the Branded Products were made malice and with ill will toward Front Row and disrupting the contracts in place between Front Row and The Brands.

101. Plaintiff has been damaged as asserted herein and these damages continue to accrue.

102. Plaintiff is entitled to damages, costs and attorneys' fees as allowed by law.

103. Plaintiff has suffered injury and, unless Defendant is enjoined from such activity, will continue to suffer injury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment as follows:

A. An order declaring that Plaintiff is the only authorized and exclusive seller of the Branded Products on Amazon;

B. Preliminary and permanent injunctive relief restraining Defendant, its agents, servants, employees, successors and assigns, and all others in concert and privity with Defendant, from selling the Branded Products on Amazon and any other e-commerce platform in the United States.

C.   An award of all damages that Plaintiff has suffered as a result of Defendant's actions;

D.   An award of all costs and fees incurred in this Action; and

E.   Such other and further relief as the Court shall find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: June 12, 2025                                    Respectfully submitted,

*/s/ Seema Rambaran*
Seema Rambaran (Id. No. 5778204)
SAUL EWING LLP
1270 Avenue of the Americas
New York, NY 10020
212-980-7237
Seema.rambaran@saul.com
*Attorneys for Plaintiffs Dare to Be Grah LLC dba Front Row Group, Beauty Pro Distributors LLC, and FB Select LLC*

,