**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DARE TO BE GRAH LLC DBA FRONT ROW GROUP, BEAUTY PRO DISTRIBUTORS LLC, AND FB SELECT LLC<br><br>        Plaintiffs,<br><br>    - against –<br><br>LY BERDITCHEV CORP.<br><br>        Defendant. | Civil Action No.: 1:25-cv-01307-AS<br><br>ORAL ARGUMENT REQUESTED<br><br>**<u>DARE TO BE GRAH LLC DBA FRONT ROW GROUP, BEAUTY PRO DISTRIBUTORS LLC, AND FB SELECT'S MOTION TO DISMISS COUNTERCLAIMS I-V</u>** |
| LY BERDITCHEV CORP. LLC<br><br>        Counter Plaintiff,<br><br>    - against –<br><br>DARE TO BE GRAH LLC DBA FRONT ROW GROUP, BEAUTY PRO DISTRIBUTORS LLC, FB SELECT LLC, PROTHERA INC., REMINGTON PRODUCTS COMPANY DBA FOUNDATION WELLNESS AND STABLE STEP LLC.<br><br>        Counter Defendants | |

*Attorneys for Plaintiffs Dare To Be Grah LLC dba Front Row Group, Beauty Pro Distributors LLC, And FB Select LLC*

SAUL EWING LLP
1270 Avenue of the Americas, Suite 2005
New York, New York 10020
Tel: (212) 980-7200
Fax: (212) 980-7209

JOHNSON LEGAL PLLC
12545 White Drive
Fairfax, Virginia 22030
202-445-2000

On the Brief:    Seema Rambaran
                 Lance Johnson

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

PROCEDURAL BACKGROUND........................................................................................ 2

STATEMENT OF FACTS AS ALLEGED IN THE COUNTERCLAIMS............................ 3

    A.   Background ............................................................................................... 3

    B.   LYB's Allegations Regarding the POWERSTEP Mark (Counterclaim I).................. 4

    C.   LYB's Allegations Regarding the KLAIRE LABS Mark (Counterclaim II) .............. 5

    D.   LYB's False Advertising Allegations (Counterclaim III) ......................................... 5

    E.   LYB's Donnelly Act Allegations (Counterclaim IV)............................................... 6

    F.   LYB's General Business Law § 349 Allegations (Counterclaim V).......................... 6

LEGAL STANDARD.......................................................................................................... 7

ARGUMENT ..................................................................................................................... 7

POINT I THE COUNTERCLAIMS SHOULD BE DISMISSED BECAUSE THE
COURT'S ORDER PERMITTING LYB AN EXTENSION OF TIME TO SERVE ITS
ANSWER DID NOT AUTHORIZE LYB TO FILE COUNTERCLAIMS OR TO JOIN
NEW PARTIES ................................................................................................................. 7

    A.   The New Counter-Defendants Should Be Dismissed for Improper Joinder................ 9

POINT II COUNTERCLAIMS I AND II SHOULD BE DISMISSED AS AGAINST
FRONT ROW FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM ...... 10

    A.   LYB Lacks Standing to Seek Cancellation of the POWERSTEP and KLAIRE LABS
       Trademarks. ............................................................................................ 10

    B.   Alternatively, Counterclaims I and II Fail to State a Cognizable Claim for Trademark
       Abandonment Through Naked Licensing. .................................................... 11

POINT III COUNTERCLAIM III SHOULD BE DISMISSED FOR FAILURE TO PLEAD
A LANHAM ACT FALSE ADVERTISING CLAIM.......................................................... 13

POINT IV COUNTERCLAIM IV (DONNELLY ACT) MUST BE DISMISSED FOR
THREE INDEPENDENT REASONS ................................................................................ 15

    A.   LYB Lacks Antitrust Standing and Is Not an Efficient Enforcer. ............................ 15

    B.   LYB Fails to Plead a Cognizable Relevant Market. ............................................. 16

    C.   Exclusive Distribution Agreements Are Not Per Se Unlawful, and LYB Pleads No
       Substantial Foreclosure.............................................................................. 17

POINT V COUNTERCLAIM V (GBL § 349) MUST ALSO BE DISMISSED. ................. 17

    A.   The Challenged Conduct Is Not Consumer-Oriented................................................ 18

    B.   LYB Identifies No Materially Misleading Statement.............................................. 18

C.    LYB Fails to Plead Injury Caused by Deceptive Conduct, and the Claim Is Duplicative of Counterclaim IV......................................................................... 19

CONCLUSION............................................................................................................... 20

CERTIFICATE OF WORD-COUNT.............................................................................. 21

## TABLE OF AUTHORITIES

FEDERAL CASES

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689 (2d Cir. 1972)................................12

*Akhenaten v. Najee*, LLC, 544 F. Supp. 2d 320 (S.D.N.Y. 2008) ...........................................10, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................7, 13, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................7, 13

*Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023) ........................................................7, 10

*Concord Assoc., L.P. v. Entertainment Properties. Tr.*, 817 F.3d 46 (2d Cir. 2016) ....................16

*Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959)..................................11

*Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154 (S.D.N.Y. 2009)................................................9

*E&L Consulting, Ltd. v. Doman Indus. Ltd.,* 360 F. Supp. 2d 465 (E.D.N.Y. 2005), *aff'd sub nom. E & L Consulting, Ltd. v. Doman Indus. Ltd.,* 472 F.3d 23 (2d Cir. 2006) ....................17

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013)........................................................17, 18

*Gatt Communications, Inc. v. PMC Assoc.*, L.L.C., 711 F.3d 68 (2d Cir. 2013) ................7, 15, 16

*Kassner v. 2nd Ave, Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) ..............................................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ..............................10

*Maurizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000) ....................................................................18

*Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247 (2d Cir. 2014)..........................................13, 15

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344 (S.D.N.Y. 2012).16

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000)..................................................8

*Paycom Billing Services, Inc. v. MasterCard Int'l, Inc.*, 467 F.3d 283 (2d Cir. 2006) ................15

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007).............15, 19

*Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 CIV. 6017 KBF, 2013 WL 342922 (S.D.N.Y. Jan. 18, 2013)..........................................................................................................................7

*Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010)....................................14

*Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009)..................................................................19

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) .................................................................16

**FEDERAL STATUTES**

15 U.S.C. §§ 1–7 ..................................................................................................................16

15 U.S.C. § 1055 ..................................................................................................................12

15 U.S.C. §§ 1064(3) ............................................................................................................5

15 U.S.C. § 1119 ...............................................................................................................5, 11

15 U.S.C. § 1125(a) .............................................................1, 3, 5, 10, 11, 12, 13, 14

15 U.S.C. § 1125(a)(1)(B) ....................................................................................................2

15 U.S.C. § 1127 ..................................................................................................................12

Fed. R. Civ. P. 12(b) ...............................................................................1, 7, 10, 11, 17

Fed. R. Civ. P. 12(b)(1) .........................................................................1, 7, 10, 11

Fed. R. Civ. P. 12(b)(6) .........................................................2, 7, 15, 16, 18, 19

Fed. R. Civ. P. 12(c) .............................................................................................................17

Fed. R. Civ. P. 13(h) ..............................................................................................................9

Fed. R. Civ. P. 15(a) ..............................................................................................................8

Fed. R. Civ. P. 16(b)(4) .........................................................................................................8

Fed. R. Civ. P. 20 ...............................................................................................................1, 9

Fed. R. Civ. P. 20(a)(2) .........................................................................................................9

Fed. R. Civ. P. 19 ...................................................................................................................9

Fed. R. Civ. P. 20 ...................................................................................................................9

Fed. R. Civ. P. 21 ...................................................................................................................9

**STATE STATUTES**

N.Y. Gen. Bus. Law § 340(1) ..................................................................................... passim

N.Y. Gen. Bus. Law § 349 ...............................................................................................1, 3, 6

**INTRODUCTION**

Plaintiff/Counter-Defendant Dare to Be Grah LLC dba Front Row Group, Beauty Pro Distributors LLC and FB Select LLC (collectively, "Front Row") move to dismiss Counterclaims filed by Defendant and Counter-Plaintiff LY Berditchev Corp. ("LYB").

LYB asserts five counterclaims: (1) cancellation of the POWERSTEP marks (directed at Stable Step and Foundation), with Front Row named as a counter-defendant on the basis of alleged abandonment ("Counterclaim I"); (2) cancellation of the KLAIRE LABS marks (directed at Prothera), with Front Row named as a counter-defendant on the basis of alleged abandonment ("Counterclaim II"); (3) Counterclaim III[1] seeks damages against all counter-defendants for false advertising under 15 U.S.C. § 1125(a); (4) Counterclaim IV seeks damages against all counter-defendants for alleged violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340(1); and (5) Counterclaim V seeks damages against all counter-defendants for alleged violation of N.Y. Gen. Bus. Law § 349 related to deceptive business practices.

Dismissal is warranted on three independent grounds: (a) LYB's extension of time to file its answer did not encompass an extension of time to file counterclaims or to join additional parties, and LYB never obtained leave of court for either; (b) the three newly added Counter-Defendants—Prothera Inc. ("Prothera"), Remington Products Company dba Foundation Wellness ("Foundation"), and Stable Step LLC ("Stable Step")—were improperly joined in violation of Fed. R. Civ. P. 20 and the Court's Scheduling Order; and (c) each of the five counterclaims fails on the merits as to Front Row, whether for lack of standing under Fed. R. Civ. P. 12(b)(1) or failure to state a claim under Fed. R. Civ. P. 12(b)(6).

---

[1] The Counterclaims as filed contain a numbering error. The false advertising claim is labeled "Counterclaim II" but follows a prior "Counterclaim II" for cancellation of the Klaire Labs Marks. For clarity, this brief refers to the claims by their substantive titles and by the order in which they appear.

## PROCEDURAL BACKGROUND

Front Row filed the original Complaint on February 13, 2025, and filed an Amended Complaint (the "FAC") on June 12, 2025 (ECF No. 21). The FAC asserted two claims: (1) false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and (2) tortious interference with contractual relations under New York common law. The FAC does not raise any trademark infringement claim or challenge the validity of any trademark registration.

By Order dated January 22, 2026, the Court granted LYB's motion to dismiss Count II for tortious interference. (ECF 33.) This case now proceeds on a single claim: Count I for False Advertising under the Lanham Act.

On January 30, 2026, the Court entered a Civil Case Management Plan and Scheduling Order ("Scheduling Order"), which, *inter alia*, set the following deadlines: joinder of additional parties to be accomplished by Monday, February 16, 2026; and defendant to file its answer, counterclaims, and third-party claims by Monday, March 2, 2026. (ECF 35, ¶¶ 1(b)–(d).) On February 27, 2026, the Court entered an Order granting LYB's request for extension of time to answer the FAC, setting a new answer deadline of Monday, March 16, 2026 (the "Order"). (ECF 37.) The Order extended only the answer deadline; it did not extend the deadlines for counterclaims or joinder of parties, which had already passed on March 2, 2026 and February 16, 2026, respectively. (ECF 35, ¶¶ 1(b)–(d).)

On March 16, 2026 (ECF 42), LYB filed its Answer and Counterclaims. In addition to asserting defenses to the FAC, LYB asserted five counterclaims against Front Row and three entities not previously named in the FAC: Stable Step LLC (owner of the POWERSTEP trademarks), Foundation (the alleged manufacturer of POWERSTEP products and purported alter ego of Stable Step), and Prothera (owner of the KLAIRE LABS trademarks). Counterclaim I seeks cancellation of the POWERSTEP marks (directed at Stable Step and Foundation), with Front Row

2

named as a counter-defendant on the basis of alleged abandonment. (ECF 42, CC ¶¶ 40–44.) Counterclaim II seeks cancellation of the KLAIRE LABS marks (directed at Prothera), with Front Row named as a counter-defendant on the basis of alleged abandonment. (CC ¶¶ 49–55.) Counterclaim III seeks damages against all counter-defendants for false advertising under 15 U.S.C. § 1125(a). (CC ¶¶ 57–64.) Counterclaim IV seeks damages against all counter-defendants for alleged violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340(1). (CC ¶¶ 65–74.) Counterclaim V seeks damages against all counter-defendants for alleged violation of N.Y. Gen. Bus. Law § 349 related to deceptive business practices. (CC ¶¶ 75–83.)

<u>**STATEMENT OF FACTS AS ALLEGED IN THE COUNTERCLAIMS**</u>

The following facts are drawn from LYB's Counterclaims (ECF No. 42) and are accepted as true solely for purposes of this motion. Front Row does not concede the accuracy of these allegations and disputes them in their entirety.

**A.      Background**

LYB alleges it is in the business of acquiring and re-selling various consumer products for profit, including through an Amazon storefront. (CC ¶¶ 21–23.)

LYB alleges that Foundation manufactures and distributes POWERSTEP-brand shoe insoles ("Powerstep Products"). (CC ¶ 13.) Front Row is alleged to be a distributor of POWERSTEP-brand insoles and to sell them through an Amazon storefront. (CC ¶ 14.) Foundation is also alleged to sell POWERSTEP-brand insoles through its own Amazon storefront, operating under the name "CURREX_PowerStep." (CC ¶¶ 15, 27.)

Stable Step is alleged to be the owner of the POWERSTEP trademarks (the "Powerstep Mark"), including U.S. Trademark Registration Nos. 3646937 for POWERSTEP, 7225650 for POWERSTEP BRIDGE (stylized), and 3405909 for POWERSTEP PINNACLE (collectively, the

3

"Powerstep Registrations"). (CC ¶ 16.) Stable Step is further alleged to license the Powerstep Mark to Foundation. (CC ¶ 17.)

Prothera is alleged to manufacture and distribute KLAIRE LABS-brand dietary supplements ("Klaire Labs Products"). (CC ¶ 18.) Front Row is alleged to be a distributor of KLAIRE LABS-brand dietary supplements and to sell them through an Amazon storefront. (CC ¶ 19.) Prothera is alleged to be the owner of the KLAIRE LABS trademarks (the "Klaire Labs Mark"), including U.S. Trademark Registration Nos. 5551790 for KLAIRE LABS, 5551460 for KLAIRE LABS (stylized), and 2426507 for KLAIRE LABORATORIES (collectively, the "Klaire Labs Registrations"). (CC ¶ 20.)

LYB alleges that both Front Row and Foundation operate Amazon storefronts that compete with LYB's Amazon storefront. (CC ¶ 26.) With respect to Foundation, LYB alleges that the CURREX_PowerStep Amazon storefront is used to "dump used, damaged and defective products on unsuspecting Amazon customers," and that Foundation ships customers products that do not match the advertised product. (CC ¶¶ 29–30.) With respect to Front Row, LYB alleges that Front Row's Amazon storefront is used as "an outlet to dump used, damaged and defective products on unsuspecting Amazon customers," and that Front Row ships customers products that do not match the advertised product. (CC ¶¶ 35–36.) LYB alleges that by using its storefront in this manner, Front Row "harms LYB and Amazon's customers." (CC ¶ 38.)

**B.      LYB's Allegations Regarding the POWERSTEP Mark (Counterclaim I)**

LYB seeks cancellation of the Powerstep Registrations on the theory that Stable Step and Foundation engaged in "naked" or uncontrolled licensing. (CC ¶¶ 39–47.) LYB alleges "on information and belief" that Foundation engaged in naked licensing by granting licenses to use the marks and failing to exercise adequate control over a substantial percentage of licensees' goods bearing the Powerstep Mark. (CC ¶ 43.) LYB further alleges "on information and belief" that

4

Stable Step and Foundation have not exercised adequate control over licensees' use of the Powerstep Mark. (CC ¶ 44.) As a specific example, LYB claims that Stable Step and Foundation "allow Front Row to enforce the Powerstep Marks, including submitting reports of infringement to Amazon, without any oversight or control." (CC ¶ 45.) LYB alleges this naked licensing caused the Powerstep Mark to lose trademark significance and warrants cancellation under 15 U.S.C. §§ 1064(3) and 1119. (CC ¶¶ 46–47.)

### C.    LYB's Allegations Regarding the KLAIRE LABS Mark (Counterclaim II)

LYB seeks cancellation of the Klaire Labs Registrations on the same naked licensing theory. (CC ¶¶ 48–56.) LYB alleges "on information and belief" that Prothera engaged in naked licensing by granting licenses to use the Klaire Labs Mark and failing to exercise adequate control over licensees' goods bearing that mark, and that Prothera lacked the working relationship with licensees that would have allowed for adequate quality control. (CC ¶ 52.) No specific licensee is identified by name. As a specific example, LYB claims that Prothera "allows Front Row to enforce the Klaire Labs Marks, including submitting reports of infringement to Amazon, without any oversight or control." (CC ¶ 54.) LYB alleges this conduct caused the Klaire Labs Mark to lose trademark significance and warrants cancellation. (CC ¶¶ 55–56.)

### D.    LYB's False Advertising Allegations (Counterclaim III)

LYB asserts a false advertising claim under 15 U.S.C. § 1125(a) against all counter-defendants. (CC ¶¶ 57–64.) LYB alleges that counter-defendants "have made and distributed, in interstate commerce, product listings and advertisements that contain false or misleading statements of fact regarding its products," including misleading statements "regarding the condition of these products." (CC ¶ 58.) LYB does not identify any specific product listing, advertisement, or statement, and does not specify which products are at issue. (*Id.*) LYB alleges these false statements "actually deceive, or have a tendency to deceive, a substantial segment of

5

Amazon customers" and that they are material to purchasing decisions. (CC ¶ 59.) LYB seeks injunctive relief, damages, disgorgement, costs, and attorneys' fees. (CC ¶¶ 61–64.)

### E. LYB's Donnelly Act Allegations (Counterclaim IV)

LYB alleges that counter-defendants have entered into agreements to monopolize and restrain competition on Amazon for Powerstep and Klaire Labs Products in violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340(1). (CC ¶¶ 65–74.) Specifically, LYB alleges that Stable Step and Foundation entered into one or more agreements with Front Row to restrict who can sell Powerstep Products on Amazon and to control pricing for those products. (CC ¶ 68.) LYB similarly alleges that Prothera entered into agreements with Front Row to restrict sales and control pricing of Klaire Labs Products on Amazon. (CC ¶ 69.) LYB further alleges that, in furtherance of these agreements, Foundation and Prothera allow Front Row to submit "false infringement reports to Amazon regarding any third parties that attempt to sell Powerstep or Klaire Labs Products on Amazon," causing Amazon to remove those third parties' product listings. (CC ¶¶ 71–72.) LYB also alleges that Front Row has "filed a slew of sham lawsuits aimed at dissuading third-party sellers" from entering the Amazon marketplace. (CC ¶ 73.)

### F. LYB's General Business Law § 349 Allegations (Counterclaim V)

LYB's final counterclaim reasserts substantially the same conduct underlying Counterclaim IV as a violation of N.Y. Gen. Bus. Law § 349. (CC ¶¶ 75–83.) LYB alleges that counter-defendants entered into agreements restricting who can sell Powerstep and Klaire Labs Products on Amazon and controlling the pricing for those products. (CC ¶¶ 78–79.) LYB further alleges that Foundation and Prothera allow Front Row to submit false infringement reports to Amazon regarding "any third parties" that attempt to sell those products, resulting in removal of the third parties' listings. (CC ¶¶ 81–82.) LYB's only injury allegation is the bare legal conclusion that it "has suffered injury." (CC ¶ 83.)

## LEGAL STANDARD

A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint. *See Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 CIV. 6017 KBF, 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013). To survive a Rule 12(b)(6) motion, the counterclaim must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Threadbare recitals of the elements of a cause of action, supported only by conclusory statements, are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded factual allegations, but is not required to accept legal conclusions couched as factual allegations. *Id.* Allegations made "upon information and belief" must still be "accompanied by a statement of the facts upon which the belief is founded." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is required when the court "lacks the statutory or constitutional power to adjudicate" the claim, including when the plaintiff lacks standing. *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023). Antitrust standing is a threshold determination to be addressed at the pleading stage "when a complaint by its terms fails to establish this requirement, we must dismiss it as a matter of law." *Gatt Communications, Inc. v. PMC Assoc.*, L.L.C., 711 F.3d 68, 75 (2d Cir. 2013) (affirming dismissal of claims for lack of antitrust standing).

## ARGUMENT

### POINT I

### THE COUNTERCLAIMS SHOULD BE DISMISSED BECAUSE THE COURT'S ORDER PERMITTING LYB AN EXTENSION OF TIME TO SERVE ITS ANSWER DID NOT AUTHORIZE LYB TO FILE COUNTERCLAIMS OR TO JOIN NEW PARTIES

LYB filed its Answer and Counterclaims on March 16, 2026 pursuant to the Order entered on February 27, 2026 (ECF 37). That Order, however, was expressly limited to the filing of LYB's

7

answer to the FAC. It did not authorize the filing of counterclaims, and it did not authorize the joinder of three new parties—Stable Step, Foundation, and Prothera—none of whom had any prior connection to this litigation.

This distinction is legally significant. Pursuant to the Scheduling Order (ECF 35, ¶¶ 1(b)–(d)), the deadline for joinder of parties had already elapsed on February 16, 2026—more than a month before LYB filed its third-party claims. The deadline to file counterclaims had similarly passed on March 2, 2026. A party seeking to modify those deadlines must satisfy the requirements of Fed. R. Civ. P. 16(b)(4), which permits modifications "only for good cause and with the judge's consent." The parties agreed only to an extension of the answer deadline. The Second Circuit has consistently held that a party seeking to amend its pleading after the deadline established in a scheduling order must satisfy the more demanding "good cause" standard of Rule 16(b) (*Kassner v. 2nd Ave, Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007)) rather than the liberal standard of Rule 15(a), and that agreements between parties narrowly construed do not expand litigation scope beyond their express terms. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (affirming denial of leave to amend where party failed to demonstrate good cause under Rule 16(b)); *see also* Fed. R. Civ. P. 16(b)(4).

LYB never sought, and the Court never granted, leave to add new parties or file counterclaims beyond the original deadlines. The fact that the parties agreed to an answer extension does not, by implication, authorize a unilateral expansion of the scope of this litigation—adding three new parties and five new claims—without court approval. *Parker*, 204 F.3d at 340; *Kassner*, 496 F.3d at 243–44. Because LYB lacked authorization to join Stable Step, Foundation, and Prothera as counter-defendants, all counterclaims asserted against them—and, derivatively, the counterclaims against Front Row that are inextricably intertwined with those new parties—

8

should be dismissed on this threshold ground. At a minimum, Stable Step, Foundation , and Prothera should be dismissed from this action for improper joinder.

**A.      The New Counter-Defendants Should Be Dismissed for Improper Joinder.**

Even setting aside the extension issue, the joinder of Stable Step, Foundation, and Prothera as counter-defendants is independently improper under FRCP 20. Rule 13(h) permits counterclaims to add new parties, but only as permitted by Rules 19 and 20. Rule 20(a)(2) allows permissive joinder of defendants only when (i) the claims against them arise out of the same transaction or occurrence, and (ii) there is a common question of law or fact. Both requirements must be satisfied. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009) (granting motion to dismiss improperly joined parties; claims against new defendants did not arise from the same transaction as the operative complaint).

Here, the claims against the three new counter-defendants do not arise from the same transaction or occurrence as the surviving claim in this case. The FAC's sole remaining claim is Front Row's allegation that LYB engaged in false advertising on Amazon. The counterclaims against Stable Step and Prothera, in contrast, seek cancellation of their respective trademark registrations based on a theory of "naked licensing"—a claim involving completely different facts, parties, and legal issues. The counterclaims further allege antitrust-style conspiracies and state-law deception claims that have no factual overlap with Front Row's false advertising claim.

There is no identifiable common transaction or occurrence linking Front Row's false advertising claim to the trademark cancellation claims against Stable Step and Prothera. Courts regularly deny or dismiss improperly joined parties where, as here, the claims lack a common transactional nexus. *See Deskovic*, 673 F. Supp. 2d at 167. Adding Stable Step, Foundation, and Prothera unnecessarily multiplies the issues, increases litigation costs, and prejudices the parties and the Court. Dismissal of those three parties under Rule 21 is appropriate.

## POINT II

### COUNTERCLAIMS I AND II SHOULD BE DISMISSED AS AGAINST FRONT ROW FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM

**A.    LYB Lacks Standing to Seek Cancellation of the POWERSTEP and KLAIRE LABS Trademarks.**

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when the plaintiff lacks constitutional standing to bring the action." *Brokamp*, 66 F.4th at 386.

A party seeking to cancel a registered trademark must demonstrate both constitutional standing under Article III and statutory standing under the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–32 (2014). "Under the Lanham Act, a party must have the requisite standing to petition for the cancellation of a registered trademark. [A] petitioner for cancellation must show a real and rational basis for his belief that he would be damaged by the registration sought to be canceled, stemming from an actual commercial or pecuniary interest in his own mark." *Akhenaten v. Najee*, LLC, 544 F. Supp. 2d 320, 332 (S.D.N.Y. 2008) (citations omitted) (granting motion to dismiss cancellation claim for failure to plead the required commercial or pecuniary interest).

LYB has not alleged any commercial or pecuniary interest in the POWERSTEP or KLAIRE LABS marks themselves that would be harmed by their continued registration. LYB describes itself only as a reseller of various consumer products. (CC ¶¶ 21–23.) It does not claim to own any competing mark or to seek registration of a mark that would be affected by the continued existence of Stable Step's or Prothera's registrations. Without this nexus, LYB lacks standing under both Article III and the Lanham Act's statutory standing requirement. *Lexmark*

*Int'l, Inc.*, 572 U.S. at 125–32; *Akhenaten*, 544 F. Supp. 2d at 332. Counterclaims I and II should be dismissed under Rule 12(b)(1).

LYB's standing problem is compounded when it comes to asserting cancellation claims against Front Row specifically. Front Row is not the owner of the POWERSTEP marks—those are owned by Stable Step. (CC ¶ 16.) Front Row is not the owner of the KLAIRE LABS marks—those are owned by Prothera. (CC ¶ 20.) The proper defendants in a cancellation proceeding are the registrants, not a downstream distributor like Front Row. The Lanham Act authorizes courts to cancel "registrations of any party to the action"—not the registrations of absent registrants brought in through a claim against a distributor. 15 U.S.C. § 1119. To the extent Counterclaims I and II purport to seek relief against Front Row, they fail as a matter of law because Front Row holds no registration and no order of cancellation directed at Front Row would be meaningful.

**B.    Alternatively, Counterclaims I and II Fail to State a Cognizable Claim for Trademark Abandonment Through Naked Licensing.**

Even if LYB could establish standing—which it cannot—Counterclaims I and II fail to state cognizable claims for trademark abandonment through naked licensing as asserted against Front Row.

To state a claim of abandonment through uncontrolled licensing, a plaintiff must allege that the trademark owner failed to exercise adequate quality control over its licensees. *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959) (establishing that a licensor who fails to exercise adequate quality control over its licensees risks forfeiting its trademark rights through "naked" licensing). LYB's abandonment theory fails for multiple independent reasons.

First, the "related companies" doctrine precludes trademark abandonment as to Stable Step and Foundation. The Counterclaims assert that Stable Step and Foundation share common

11

ownership and address, with the further allegation that "Foundation (the manufacturer) is an alter ego of Stable Step (the trademark owner)." (CC ¶ 8.) Despite this relationship, the Counterclaims assert "on information and belief" that the manufacturing by Foundation is uncontrolled. (CC ¶¶ 43–44.) This is legally irreconcilable. Under 15 U.S.C. § 1055, the use of a mark by a related company inures to the benefit of the registrant and does not affect the validity of the registration. Where two entities share common ownership, control of the mark's use is presumed. The naked licensing theory and the alter ego allegations are thus legally irreconcilable on the face of the pleading.

Second, the enforcement activities that LYB complains of—Front Row's submission of infringement reports to Amazon—demonstrate active policing of the mark, not abandonment. *See A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 693 (2d Cir. 1972) ("[T]he showing of plaintiff's vigorous effort to limit intrusion by Mark Cross puts this case light years away from the Lanham Act's definition of abandonment."). Trademark enforcement is the opposite of abandonment. The allegation that Stable Step "allows" Front Row to submit infringement reports does not support a loss-of-control narrative; it supports the inference that enforcement is ongoing and authorized. (CC ¶ 45.)

Third, LYB's abandonment theory requires that the marks have lost their "significance as a mark"—*i.e.*, that the consuming public no longer associates them with a single commercial source. 15 U.S.C. § 1127. Counterclaims I and II fail to allege any facts supporting this essential element anywhere. The absence of an allegation that the POWERSTEP or KLAIRE LABS marks have become generic or have lost source-identifying significance is a fatal deficiency that independently warrants dismissal.

Fourth, the Counterclaims are replete with conclusory allegations made "on information and belief" without any supporting facts—particularly as to the KLAIRE LABS marks. LYB does not identify any licensee of the KLAIRE LABS marks, does not explain why it believes any licensee exists, and offers only the unqualified assertion that "the mark" has lost trademark significance without identifying any consumer confusion or evidence of genericness. (CC ¶¶ 52–56.) This Court has consistently held that such bare, conclusory "information and belief" pleadings are insufficient to state a claim. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Counterclaims I and II should be dismissed.

## POINT III

## COUNTERCLAIM III SHOULD BE DISMISSED FOR FAILURE TO PLEAD A LANHAM ACT FALSE ADVERTISING CLAIM

Counterclaim III purports to assert a false advertising claim against all counter-defendants under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As to Front Row, it fails to plead the required elements with the specificity demanded by *Twombly* and *Iqbal*.

To state a Lanham Act false advertising claim, a plaintiff must plausibly allege: (1) a false or misleading statement of fact in a commercial advertisement; (2) that the statement actually deceived or had the tendency to deceive a substantial segment of the audience; (3) that the deception was material; (4) that the defendant caused the statement to enter interstate commerce; and (5) that the plaintiff has been or is likely to be injured. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (affirming judgment for plaintiff and articulating elements of a Lanham Act false advertising claim).

First, Counterclaim III fails to identify any specific false statement allegedly made by Front Row. The pleading refers only to "product listings and advertisements" containing "false or misleading statements" about product "condition," but does not specify any particular listing,

13

advertisement, or statement attributable to Front Row. (CC ¶ 58.) Such vague and conclusory allegations are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has found insufficient to state a claim. *Iqbal*, 556 U.S. at 662. Courts routinely disregard pleadings that are mere conclusions and are not entitled to the assumption of truth. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (affirming dismissal where complaint consisted "largely of conclusory statements and vague assertions").

Second, Counterclaim III fails to identify any specific product to which the alleged false advertising relates. It is unclear whether the claim concerns POWERSTEP insoles, KLAIRE LABS supplements, or any other product. (CC ¶¶ 57–64.) This lack of specificity independently undermines the sufficiency of the pleading.

Third, Counterclaim III does not allege any specific injury to LYB. Instead, it offers only a conclusory assertion of "irreparable injury" without any factual detail as to how any alleged false advertisement by Front Row caused harm to LYB in particular. (CC ¶ 62.) As the party allegedly harmed, LYB is uniquely positioned to plead facts supporting its claimed injury, yet it fails to do so.

Fourth, the counterclaim draws no causal connection between any alleged conduct by Front Row and any harm to LYB. There is no explanation of how any purported false advertising by Front Row caused injury to LYB, as opposed to consumers or the marketplace generally.

Fifth, the Amazon customer reviews cited in the counterclaim are statements of third-party consumers, not commercial representations by Front Row. (CC ¶¶ 31, 37.) A collection of unattributed negative Amazon reviews does not constitute plausible factual support for a Lanham Act false advertising claim, which requires a showing of false commercial statements in

14

commercial advertising or promotion. *Merck Eprova AG*, 760 F.3d at 255. Counterclaim III should be dismissed as to Front Row.

**POINT IV**

**COUNTERCLAIM IV (DONNELLY ACT) MUST BE DISMISSED FOR THREE INDEPENDENT REASONS**

### A.    LYB Lacks Antitrust Standing and Is Not an Efficient Enforcer.

A Donnelly Act plaintiff must plausibly allege both (a) a "special kind of antitrust injury"—harm flowing from the anticompetitive effects of the violation—and (b) that it is a "suitable plaintiff" and "efficient enforcer" of the antitrust laws. *Gatt Communications, Inc.*, 711 F.3d at 76 (affirming dismissal for lack of standing). The antitrust laws "were enacted for the protection of competition, not competitors," and "[t]he antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Paycom Billing Services, Inc. v. MasterCard Int'l, Inc.*, 467 F.3d 283, 290 (2d Cir. 2006) (quotations and citations omitted) (affirming Rule 12(b)(6) dismissal; merchant lacked antitrust standing because alleged injury was indirect and derivative of harm to competing payment networks).

LYB's alleged harm—being unable to sell branded products on Amazon because a brand owner selected a different distributor—is precisely the kind of competitor injury, rather than competitive injury, that antitrust law does not protect. *See Gatt Communications, Inc.*, 711 F.3d at 78–80 (distributor's lost revenue from termination of distribution contract was not antitrust injury even assuming underlying bid-rigging scheme was unlawful). The efficient-enforcer factors further cut against LYB: any antitrust harm from the alleged arrangements would fall most directly on consumers, not on a single excluded reseller. *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121–22 (2d Cir. 2007) (affirming Rule 12(b)(6) dismissal; terminated

15

distributor lacked antitrust standing where it suffered no injury from increased prices—the harm the antitrust laws were designed to prevent—and was not an efficient enforcer of those laws). LYB's Donnelly Act counterclaim should be dismissed for lack of antitrust standing.

###### B.    LYB Fails to Plead a Cognizable Relevant Market.

Even if LYB had standing, the Donnelly Act, N.Y. Gen. Bus. Law § 340, claim still fails. The Donnelly Act is construed in lockstep with Section 1 of the Sherman Act. *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012) (granting Rule 12(b)(6) motion and holding "the standard for a well-pleaded Donnelly Act claim is the same as a claim under Section 1 of the Sherman Act"); *Gatt Communications, Inc.*, 711 F.3d at 80. (affirming dismissal of antitrust claim). A threshold requirement under both statutes is a plausible definition of the relevant product market. "To survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a 'rational relation to the methodology courts prescribe to define a market for antitrust purposes—analysis of the interchangeability of use or the cross-elasticity of demand, and it must be 'plausible.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 199–200 (2d Cir. 2001) (citations omitted) (articulating the market definition pleading standard). Dismissal is warranted where a complaint fails "even to attempt a plausible explanation as to why a market should be limited in a particular way." *Id. at 200*; *see also Concord Assoc., L.P. v. Entertainment Properties. Tr.*, 817 F.3d 46, 52–53 (2d Cir. 2016) (affirming Rule 12(b)(6) dismissal where plaintiff's proposed market omitted obvious interchangeable substitutes, holding that plaintiffs thereby "exempt[ed] themselves from the requirement of defining the market according to the rules of interchangeability and cross-elasticity").

LYB's counterclaim never defines a relevant market. It gestures vaguely toward "sales on Amazon" for POWERSTEP and KLAIRE LABS products, but a distribution channel is not a market. (CC ¶ 67.) LYB does not identify what products are reasonably interchangeable with

16

POWERSTEP insoles or KLAIRE LABS supplements, does not define any geographic scope, and offers no analysis of cross-elasticity of demand. Without a properly pleaded relevant market, there is no foundation upon which any antitrust analysis can rest, and the Donnelly Act claim fails at the threshold.

### C. Exclusive Distribution Agreements Are Not Per Se Unlawful, and LYB Pleads No Substantial Foreclosure.

LYB's theory reduces to the allegation that Front Row held an exclusive (now expired) distribution agreement for POWERSTEP products and an agreement governing KLAIRE LABS products on Amazon. (CC ¶¶ 67–69.) Exclusive dealing arrangements are not, standing alone, a violation of the antitrust laws. To state a violation, the exclusive dealing agreement must foreclose competition in a substantial share of the relevant market. *E&L Consulting, Ltd. v. Doman Indus. Ltd.,* 360 F. Supp. 2d 465, 474 (E.D.N.Y. 2005)*, aff'd sub nom. E & L Consulting, Ltd. v. Doman Indus. Ltd.,* 472 F.3d 23 (2d Cir. 2006). LYB pleads no facts showing that Front Row's distribution arrangement foreclosed competition in any substantial portion of any identifiable market. It alleges only that LYB—a single reseller—could not sell two specific branded product lines on one platform. That does not plausibly establish the market-wide foreclosure the antitrust laws require.

### POINT V

### COUNTERCLAIM V (GBL § 349) MUST ALSO BE DISMISSED.

To state a claim under GBL § 349, a plaintiff must allege: (1) consumer-oriented conduct; (2) that is materially misleading; and (3) that caused the plaintiff injury. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (affirming Rule 12(c) dismissal, analyzed same as a Rule 12(b) motion). LYB's counterclaim fails to plead facts sufficient to satisfy any element of the claim.

### A.    The Challenged Conduct Is Not Consumer-Oriented.

Section 349 "was intended to protect consumers" and reaches only conduct with "a broader impact on consumers at large," not private commercial arrangements between businesses. *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (affirming Rule 12(b)(6) dismissal of § 349 claim; dispute that was "fairly characterized as private, unique to [the parties], and without direct impact on the body of consumers" falls outside § 349). The statute does not reach conduct involving competitors' commercial arrangements that never reached the consuming public. *Id.*

Counterclaim V is premised on the same distribution agreements and Amazon infringement-reporting authority that underlie the Donnelly Act counterclaim. (CC ¶¶ 77–82.) These are private commercial arrangements between businesses. They are not directed at consumers and do not constitute consumer-facing deception. The private commercial dispute between LYB and Front Row over access to a branded product distribution channel is precisely the type of "private contract dispute[], unique to the parties" that falls outside § 349's reach. *Maurizio*, 230 F.3d at 521. (citation omitted).

### B.    LYB Identifies No Materially Misleading Statement.

Section 349 requires that the challenged act be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink*, 714 F.3d at 741. LYB identifies no statement— no advertisement, no product listing, no representation—that Front Row made to any consumer that was false or deceptive. The Amazon customer reviews appended to the counterclaim (CC ¶ 37) are third-party consumer statements, not representations by Front Row, and cannot substitute for an affirmative false statement that is the predicate of any § 349 claim. *Id.* at 742 (plaintiff "who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to

dismiss"). The private contractual terms governing distribution on Amazon are likewise not representations made to, or likely to mislead, any ordinary consumer.

### C.    LYB Fails to Plead Injury Caused by Deceptive Conduct, and the Claim Is Duplicative of Counterclaim IV.

A § 349 plaintiff must plead actual injury caused by the deceptive act—not injury caused by a competitor's success or by private commercial arrangements. *Id.* at 741. LYB's only injury allegation in Counterclaim V is the bare legal conclusion that it "has suffered injury." (CC ¶ 83.) LYB never identifies what deceptive act was directed at it, what injury that act caused, or how that injury is distinct from the business exclusion alleged in Counterclaim IV.

Finally, Counterclaim V is substantively duplicative of Counterclaim IV. It realleges the identical distribution agreements, infringement-reporting authority, and excluded-seller theory as the Donnelly Act counterclaim (compare CC ¶¶ 67–74 with ¶¶ 77–83), adding only the word "deceptive" without identifying any independently consumer-oriented conduct. The Second Circuit has confirmed that a § 349 monetary loss must be distinct and independent of losses arising from other legal theories. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (affirming Rule 12(b)(6) dismissal of § 349 claim; "Although a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract"). LYB cannot avoid the more demanding antitrust standing requirements of the Donnelly Act—which the Second Circuit identifies as a threshold question to be resolved at the pleading stagesimply by relabeling identical conduct as "deceptive" and repleading it under § 349. *Port Dock*, 507 F.3d at 121.

19

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss

Counterclaims I through V in their entirety, with prejudice.

Dated: April 20, 2026

Respectfully submitted,

*/s/ Seema Rambaran*
Seema Rambaran (Id. No.
5778204)
SAUL EWING LLP
1270 Avenue of the
Americas New York,
NY 10020
212-980-7237
Seema.rambaran@saul.com

Lance G. Johnson (Admitted pro hac
vice)
JOHNSON LEGAL PLLC
12545 White Drive
Fairfax, Virginia 22030
202-445-2000
Lance@lgjlegal.com
*Attorneys for Plaintiffs/Counter-*
*Defendants Dare to Be Grah*
*LLC dba Front Row Group,*
*Beauty Pro Distributors LLC,*
*and FB Select LLC*

20

## CERTIFICATE OF WORD-COUNT

Pursuant to Local Civil Rule 7.1(c), I hereby certify that, using the word count of the word-processing program used to prepare the document, this brief contains 5,812 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

/s/ *Seema Rambaran*
Seema Rambaran

21